**FILED**

Mar 12 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ robertc    DEPUTY

Karen L. Willis, J.D.
220 West G Street, Suite E.
San Diego, CA 92101
Telephone: (619) 206-5311
Email: boringlegalwork@gmail.com

*Pro se*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARLEM WEST MUSIC GROUP<br><br>Plaintiff,<br><br>vs.<br><br>YOUTUBE, L.L.C., a Delaware company; and DOES 1-10, inclusive.<br><br>Defendants. | Case No.  **'21CV448 DMS KSC**<br><br>**COMPLAINT FOR:**<br><br>(1) Copyright Infringement<br>(2) Vicarious Copyright Infringement<br>(3) Violations of California's Unfair Competition Law<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT                                Case No.

## INTRODUCTION

This case involves the well-publicized results of one of the first cases brought to trial under section 203 of the 1976 Copyright Act. Plaintiff Harlem West Music Group bring this complaint against Defendant YouTube, L.L.C., for damages. Plaintiff alleges as follows:

1. In the case of Scorpio v. Willis (Southern District of California, Hon. Judge Ted Moskowitz), on or about 2011, Victor Willis ("Willis") served notices of terminations (the "Notices") regarding grants to Can't Stop Productions ("Can't Stop") and Scorpio Music ("Scorpio") of his copyrights to numerous Village People compositions for which he wrote the lyrics. On or about 2012, Can't Stop brought an action seeking to have the notices declared invalid.

2. On or about 2013, the Notices were declared VALID. On or about 2014, a Jury trial was held for Willis who sought upwards of 50% ownership in the compositions. The results (pursuant to the jury verdict) were that Willis recaptured 33% ownership in 20 compositions including "In the Navy" and "Go West," and 50% ownership in 13 compositions including the biggest and most iconic hit "Y.M.C.A."

3. On or about September 15, 2016, Willis served notices of terminations of grants or implied grants of copyrights on Universal Music Group, Can't Stop Productions/Music and Scorpio Music with respect to all Village People recordings wherein Willis is the featured vocalists, and all original music Videos, including the original iconic "Y.M.C.A." music video.

4. Moreover, pursuant to section 203 of the 1976 Copyright Act, the aforementioned Notices (master recordings, and music videos) were all filed in the U.S. Copyright Office with subsequent receipt of official Certificates of Recordation.

COMPLAINT                              1            Case No.

5. This time, none of the parties challenged Willis's Notices of Terminations in a court of law. Therefore, Willis recaptured 100% of his contributions to the copyrights (master recordings and music videos) on the effective date of termination pursuant to the Notices.

6. The effective date of termination for all the Notices (grants or implied grants of copyrights) was September 15, 2018.

7. Willis transferred all his rights in the recaptured copyrights to Harlem West Music Group ("Harlem West") including the initial recaptured copyrights, the master recordings, and music video rights as well.

8. Over several years, Harlem West has suffered and continued to suffer irreparable harm, and financial losses as a direct consequence of YouTube's deliberate and inexplicable failure to allow Harlem West to resume monetizing its Village People music videos on its platform (as an owner of the copyrights) after the very co-owners of the copyrights filed bogus takedown orders; all of which were removed or retracted by them.

9. Though there are presently no claims or takedown request on Harlem West's *Victor Willis Music Channel* (and none would be valid under the circumstances) YouTube continues to deny Harlem West's *Victor Willis Music Channel* competing monetization of its Village People music videos. Instead, YouTube only allows Harlem West's co-owners of the copyrights to monetize the music videos therein stifling competitive use of the copyrights amongst the copyright owners, facilitating and/or directly engaging in unfair competition.

10. When Plaintiff filed takedown requests for the removal of certain videos uploaded without permission and which constitutes copyright infringement, YouTube refused to remove the videos.

11. YouTube's failure takedown the offending videos as requested, as well as

COMPLAINT     2     Case No.

18. The Court has supplemental jurisdiction over the third claim (state claim) for relief pursuant to 28 U.S.C. § 1367 because the claim arises out of the same nucleus of the operative federal claim.

19. Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 13919 (b) because Plaintiff reside and operate her business within the Southern District of California.

## FACTUAL ALLEGATIONS

20. On or about September 11, 2017, 2018, Plaintiff filed a counter-takedown notice with YouTube related a Universal Music Group ("UMG) takedown request of Plaintiff's videos. Plaintiff demanded that YouTube provide her with contact information on the person or persons acting on behalf of UMG requesting the takedown of her videos. Defendant YouTube refused to provide Plaintiff with the requested information. However, had the requested contact information been provided, Plaintiff could have made direct contact with UMG and quickly had the issue resolved.

Plaintiff then put YouTube on notice that, since UMG was an owner music video but not an owner of the compositions whatsoever but which Plaintiff owns, she would file takedown notices of all UMG Village People music videos because she would had not and will not issue UMG the required composition license considering that UMG had filed takedown requests on her videos. This means that UMG, at the most, could display the videos without sound (the music compositions).

21. On or about November 2018, Plaintiff demanded that YouTube takedown all UMG relevant Village People music videos for copyright infringement as Plaintiff had not and would not grant UMG a license for use of the

COMPLAINT                     4         Case No.

compositions at YouTube (especially "Y.M.C.A.") in conjunction with their partial ownership in Village People music videos.

22. On or about November 2018, YouTube responded that it could not takedown the UMG music videos because YouTube has a special relationship with companies like UMG through Content ID. The same Content ID that YouTube repeatedly denied Plaintiff of course. Plaintiff responded by reminding YouTube that were it to fail to remove the videos or disable the sound, it would have waived its protection under the *safe harbour* provision of the *Digital Millennium Copyright Act* (DMCA), and Plaintiff would eventually sue.

23. YouTube also failed to act to take down numerous other, unrelated, takedown requests of offending videos engaged in copyright infringement against Plaintiff.

24. *Victor Willis Music Channel* is a well-established video music channel at YouTube that has operated since 2013 with over 6.2 million views.

25. YouTube approved monetization for the channel in 2014. Upon Monetization, Harlem West earned in excess of $700-$1,200 per month for YouTube's placements of its ads.

26. In 2015, *Victor Willis Music Channel* started receiving false copyright claims on its account. False or bogus claims to copyrights in efforts to commandeer monetization of popular music videos is quite common at YouTube.

27. In Plaintiff's case, each time a bogus copyright claim was filed, Plaintiff filed the required counter-takedown notification and the false claims were withdrawn after the claimant discovered they'd filed a claim against one of the actual owners of the copyright.

28. In fact, this issue is such a nuisance with major music copyright owners

COMPLAINT 5 Case No.

that YouTube assigns Content ID numbers to publishers which helps to identify instances of unauthorized copyright use, to track monetization and to add monetization to a video utilizing a particular music copyright. Though YouTube has assigned Content ID numbers to Plaintiff's co-owners of her copyrights, YouTube have time and time again, refused Plaintiff's request to likewise be assigned a Content ID.

29. On March 29, 2018, Plaintiff received a letter from YouTube stating that it had determined that *Victor Willis Music Channel* is no longer eligible for monetization. Since it appeared to be a computer-generated message, Plaintiff was unable to receive a human reply regarding the matter, though she tried on numerous occasions.

30. Accordingly, Plaintiff followed the instructions in the computer-generated email and re-applied for monetization as the computer-generated message suggested.

31. However, Plaintiff re-applied for monetization on at least four occasions within the past two years to no avail. Each time Plaintiff received a computer-generated message from YouTube indicating that *"Your channel was not accepted for monetization."* The computer-generated message further states: *"refused content. Channel uses someone else's content without making changes that add significant value."*

32. Actually, *Victor Willis Music Channel* only uses music, compositions, and videos owned, or partially owned by Plaintiff. There are no existing claims by anyone related to *Victor Willis Music Channel*. Moreover, all prior claims filed were all released as far back as 2019. Yet YouTube has continued to deny *Victor Willis Music Channel* monetization for the same videos it used to monetize prior to March 29, 2018.

COMPLAINT 6 Case No.

33. On or about March 2019, Plaintiff discovered that YouTube had conspired with Plaintiff's co-owners of the copyrights (Universal Music Group, and Scorpio Music Group) to deny Plaintiff her right to exploit the music videos pursuant to Section 203 of the 1976 Copyright Act., termination and recapture provisions.

34. Moreover, on or about March 2018, defendant YouTube, without knowledge nor permission from Plaintiff, allowed or aided Scorpio Music's access, or hack into *Victor Willis Music Channel* in efforts to commandeer Plaintiff's YouTube Channel Village People music videos and other music videos for purposes of control and monetization. All in efforts to deny and/or frustrate Plaintiff's right to compete with her co-owners right to exploit the copyrights, who no longer had exclusive right to do so.

35. Plaintiff inadvertently discovered the hack on or about June of 2019 after noticing that Victor Willis Music Channel video's (especially the iconic hit "Y.M.C.A." written by Plaintiff's husband, Victor Willis) appeared not as belonging to *Victor Willis Music Channel*, but Scorpio Music's *Village People Music Channel*, though it was actually Plaintiff's uploaded music video. The site had been hacked in-to or commandeered by Scorpio Music, Plaintiff's co-owner of the copyright who once own 100% of the copyright prior to Plaintiff terminating and recapturing upwards of 50% ownership from Scorpio Music.

36. On or about March 2019, Plaintiff made contact with her co-owner of the copyrights (Scorpio Music) notifying them that she had discovered their takeover of *Victor Willis Music Channel*. Plaintiff then demanded that Scorpio Music immediately get out of *Victor Willis Music Channel or* else. Scorpio Music acknowledged their access to Plaintiff's music channel and immediately assigned one of its techs to extricate Scorpio Music from the Plaintiff's music channel. This

COMPLAINT 7 Case No.

process took about two weeks to complete before all music videos at *Victor Willis Music Channel* were returned to its rightful header.

37. On information and belief, though YouTube knew Plaintiff to be one of owners of the music videos and compositions just like Scorpio Music and Universal had partial ownership, YouTube aided or facilitated Scorpio Music's hacking or access into *Victor Willis Music Channel* without the knowledge nor permission of Plaintiff.

38. All of YouTube's actions including the removal of *Victor Willis Music Channel* monetization; the denial of Plaintiff's numerous requests for a Content ID number, the aiding of hacking, or allowing Scorpio Music direct access to *Victor Willis Music Channel* without Plaintiff's knowledge or permission; allowing the filing of bogus copyright claims by Believe Music (on behalf of Scorpio Music), Universal Music (all since retracted or released) were designed to stifle Plaintiff's right to compete with her co-owners at YouTube to exploit her recaptured share of ownership of the compositions and music videos at YouTube. All constituting unfair competition in violation of California's Unfair Competition Law; and conspiracy to engage in unfair competition.

39. The unfair competition by YouTube has resulted in the loss of an amount exceeding $100,000 in lost revenue or significantly more since March 2018.

# FIRST CLAIM FOR RELEIF
**Copyright Infringement**

40. Plaintiff' reincorporate by reference paragraphs 1-39 as if set forth herein.

41. Plaintiff is an exclusive copyright owner of the works identified in paragraphs 1-38. These works have been reproduced, distributed, displayed, and publicly performed on YouTube without Plaintiff's authorization.

42. By engaging in acts causing these infringing works to be reproduced, distributed, displayed, and publicly performed on the internet, Defendant is violating Plaintiff's exclusive rights in violation of 17 U.S.C. § 106, including sections 106(1), 106(3), 106(5), 106(6), and 17 U.S.C. § 501.

43. By refusing to takedown the offending videos as requested by Plaintiff, Defendant waived its safe harbor under the provisions of the Digital Millennium Copyright Act (DMCA).

44. Defendant's infringements have been willful, intentional, purposeful, and in disregard of and indifferent to the Plaintiff's rights.

45. As a direct and proximate result of Defendant's infringement of Plaintiff's exclusive copyrights, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at the election of Plaintiff

and pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to Defendants' profits from the acts of infringement, to be proven at trial.

46. Plaintiff is entitled to her costs, including reasonable attorneys' fees (if incurred), pursuant to 17 U.S.C. § 505.

47. Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff copyrights.

## SECOND CLAIM FOR RELEIF
**Vicarious Copyright Infringement**

48. Plaintiffs reincorporate by reference paragraphs 1-47 as if set forth herein.

49. The YouTube users identified in this complaint, and in general, have infringed and are infringing Plaintiff's rights in her registered copyrighted musical and/or audiovisual works by, inter alia, uploading and downloading infringing copies of Plaintiff's copyrighted works onto and from YouTube's website and publicly performing, displaying, distributing, and reproducing, or purporting to authorize the public performance, display, distribution, or reproduction of such copyrighted works or infringing videos, all without authorization. Certain YouTube users are therefore directly infringing Plaintiff's exclusive rights of

COMPLAINT 10 Case No.

reproduction, distribution, public performance, and public display under U.S.C. §§ 106(1), (3), (4), and (5).

50. Defendant is vicariously liable for the infringing acts of YouTube users. Defendant' have both the right and the ability to supervise YouTube users' infringing conduct and to prevent YouTube users from infringing Plaintiff's copyrighted works but failed to do so. YouTube significantly and directly benefit from infringement by its users.

51. Defendant's infringement is willful, intentional, purposeful, and in disregard of an indifferent to Plaintiff's rights.

52. As a direct and proximate result of Defendant's infringement of Plaintiff's exclusive copyrights, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at the election of Plaintiff pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to Defendant's profits from the acts of infringement, to be proven at trial.

53. Plaintiff is entitled to costs, including reasonable attorneys' fees (if incurred) pursuant to 17 U.S.C. § 505.

54. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent

injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Plaintiff's copyrights

### THIRD CLAIM FOR RELIEF

**(Violations of California's Unfair Competition Law)**

California Business & Professions Code § 17200

55. Plaintiff' repeat and re-allege all allegations contained in paragraphs 1 through 54 inclusive, as though fully set forth herein.

56. By providing substantial assistance to third parties, namely Universal Music Group, and Scorpio Music Group to make false claims of copyright infringement against *Victor Willis Music Channel* only to later have them withdraw or release such claims, made it appear that Plaintiff music channel was somehow uploading music videos that she has no right to exploit. But YouTube knew the truth. YouTube, Scorpio Music, and Universal Music all knew Plaintiff had recaptured ownership of the music videos copyrights, master recordings, and compositions, thus entitled, as a co-owner, to compete with Scorpio and UMG to exploit the compositions, music videos and master recordings, yet YouTube sought to aid the parties in stifling Plaintiff's competition therein engaging in unfair competition against plaintiff in violation of California's Unfair Competition Act.

57. YouTube engaged in direct unfair business tactics when it refused to grant Plaintiff a Content ID number as it did for her co-owners of the copyrights when it knew Plaintiff to be a music publisher and co-owner of the copyrights to songs related to existing Content IDs in a number of iconic songs meeting or exceeding YouTube's minimum requirement for the issuance of a Content ID number.

58. YouTube informed Plaintiff that she must manually process

COMPLAINT                                12        Case No.

takedown requests of unauthorized use of the copyrights causing undue burden, while issuing to Plaintiff's co-owners of the copyrights (Scorpio Music and Universal Music) Content IDs enabling them to electronically track unauthorized use of the copyrights.

59. YouTube's denial of Plaintiff a Content ID substantially interferes with Plaintiff's right to exploit her copyrights. The denial of Plaintiff, a Content ID by YouTube stifles competition between the co-owners in the exploitation of the copyrights at YouTube. Moreover, YouTube's denial of Plaintiff a Content ID places her in a unfair disadvantage to protect her copyrights at YouTube.

60. YouTube engaged in direct unfair business tactics when it, without reasonable cause took away Plaintiff's monetizing privileges and refused re-instate Plaintiff's monetizing privileges.

61. All constituting unfair competition under Section 17200.

62. Accordingly, Plaintiff seeks any, and all available damages awards, including restitution.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff pray for the following relief:

a. An award to Plaintiff for damages, including but not limited to infringement damages, compensatory, statutory, and punitive damages, as permitted by law in an amount to be proven at trial but no less than $100,000;

b. An award of punitive damages in an amount to be determined;

c. An award of reasonable attorneys' fees (if incurred);

d. For any such other relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

In accordance with Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury on all issues so triable.

**DATED:** March 11, 2021  Respectfully submitted,

KAREN L. WILLIS

21 cv 448 DMS-KSC

DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS128260
Cashier ID: akukura
Transaction Date: 03/12/2021
Payer Name: Karen Willis

CIVIL FILING FEE- NON-PRISONER
 For: Karen Willis
 Case/Party: D-CAS-3-21-CV-000448-001
 Amount:     $402.00

CHECK
 Check/Money Order Num: 5340
 Amt Tendered:  $402.00

Total Due:      $402.00
Total Tendered: $402.00
Change Amt:     $0.00


There will be a fee of $53.00
charged for any returned check.